Next, the United Pacific Railroad Company v. Illinois Mine Subsidence Insurance Fund, and we'll begin with oral argument, Ms. Mendoza, from you. May it please the Court, Riley Mendoza on behalf of Appellant Union Pacific Railroad Company. Unless the Court has another suggestion, I plan to first address the fund's primary jurisdiction argument, then I'll talk about Illinois preclusion law, which applies here, and then I'll talk about federal preclusion law, that's the Perry case and the Taylor case. But first I wanted to clarify something after reading the briefs. Only issue preclusion and non-preclusion are at issue on this appeal. Claim preclusion is not at issue at this appeal. It is still at issue on the one count that remains in the District Court, but we are not arguing claim preclusion for the counts before this Court. With that clarification in mind, I'll first move to jurisdiction. This Court has clear authority to take appeals from the denial of injunctive relief. I don't know if I'd characterize the authority as clear. We've got the Albert case, we have the Holmes case, a variety of other cases. Those decisions tell us to look at this on a continuum. What is your argument as to why this should be at the end of the continuum in which we would find jurisdiction? You are absolutely right. When there are multiple injunctions, and some are denied and some are not, Albert is the key case. And Albert tells the Court to look at, first it tells the Court to look and see if the bulk of the injunction was denied. And it also tells the Court to look and see if the legal issues are distinct. So here, the vast majority of the relief. So where in the record do you point to to say the vast majority of the relief was denied? So the count that's still in the District Court relates only to claims, mines subsidence claims that the fund had tendered, that the fund had in 2019, the last time it had a judgment against it. We have a five-year statute of limitations here. Since 2019, the fund has only filed one mines subsidence case, the Hill case, which is pending now in State Court. The rest of those cases are time barred. So why should we look at this now and not in 2022 when that ruling first came down? So that is another, as you correctly point out, another jurisdictional argument that the fund has raised is that we had to appeal after the denial of the, or the grant of the first motion to dismiss. There's no rule that you have to, that you can't move to amend a complaint and try to avoid an appeal by amending your complaint. It's common practice and it's a good practice to allow parties to amend their complaint. It actually eliminated two key issues for this appeal, and in many cases, it can eliminate the need of appeal altogether. That was our hope, of course. And we're all in favor of that. But my question goes to a little bit of a different point than what was in the briefs. You're saying right now, basically, because everything is time barred, the injunction, not everything, but basically the overwhelming majority of the relief that you're seeking was denied because the claims at issue would be time barred. Why shouldn't we look at that question in 2022? Why should we say, well, we're really going to look at appellate jurisdiction. You get a ruling in 2022, and the Alberts Continuum at that point is really not in your favor, right? But then we wait until 2024, and now the Alberts Continuum might be in your favor. Why should we look at it in 2024 and not 2022? Well, because we took the appeal in 2024. We didn't take it in 2022. We tried to fix the issues that we felt that the district court had not fully understood what we were seeking. And we tried to make it more clear with a second amended complaint. And we tried. We got a decision dismissing the counts again. And we took the appeal in 2024. The Albert case does not say you need irreparable harm. It does not have to be a denial of a TRO or a preliminary injunction. The statute doesn't say that either. It says the denial of an injunction. So just by the plain language of the statute, you have authority to take the appeal. Albert tells you to look at the practical realities. It actually says you can even take an appeal if no injunction was denied, if that was the practical result. And the practical result here is that we're trying to stop the re-litigation of the same case by the same party on dozens of claims that have been tendered to Union Pacific since 2019 and all future claims. That is the relief we're seeking. This is the bulk of the dispute. The claim that still exists in the district court is one $45,000 claim that the fund filed in state court. We tried to remove it. It got sent back to state court. It's only $45,000, and the district court has already found that it can be decided on claim preclusion grounds because the fund had that. It was a 2015 Binds of Silence. The fund had that claim and had already tendered it to Union Pacific. At the time, we had a 2019 trial in federal court, got a many-page decision going through the 70-year-old records in great detail. The fund did not appeal that decision. They had that claim at that time. You're relying heavily on the prospective, retrospective nature of this, is that correct? Meaning the requested relief, to the extent it's prospective, that is something that you'd argue is in favor of us making this ruling now versus what's left that's retrospective, being very small. There's very little left, retrospective. I mean, we have the claims that have been tendered to us since 2019 that are before. We have dozens of claims that we have been, that the fund has indicated that it seeks to get recovery from Union Pacific. So we certainly have current claims that are at issue here, but it also includes the future claims. Unless you have more. Why don't you move to the peritoneum. Okay, let me move to the preclusion law. So first of all, in deciding issue and non-party preclusion, Illinois law applies. When a diversity court sits in Illinois, Illinois law, preclusion law applies. This court in the Cannon case this year made that very clear. The fund does not dispute that Illinois law applies. So we really should be looking at the Illinois preclusion cases. Illinois cases look not at practicalities but formalities. The things they look at, the key issues that come up again and again in these cases is one, did the party have its day in court? Two, were its interests adequately represented? And three, was the same party in both cases or were the parties so closely related that they should be treated in privity with each other? Concentrate on that identity component. Excuse me? Concentrate on that identity component.  And I, Judge Brennan, you're correct that that is what the fund has focused on, well, so I'll start with that. The fund was in all these parties. It was a named party. It was the real party of interest in all of these cases. Under Illinois law, well, so, you know, you can decide it right there. But if you go with the fiction that the fund has used, which is that it's a different party because it's in a nominally different capacity in each case, the fund is at least in privity with itself. The fund has been in every case. It's controlled every case. It's directly participated. It's always had the same interests. The only difference is that there's a different homeowner involved in every case, but that's not relevant at all to how the fund has litigated the cases or to the fund's interests. And we should note here, by the way, that we are not seeking to bind any homeowner to the extent they have an uninsured claim. So we're only seeking to preclude the fund and continuing to litigate the same interests that it's already litigated multiple times to conclusion. And the district court, both the district judge and the magistrate judge held that only two parties could be affected by this case, Union Pacific and the fund. So that's sufficient under Illinois law, the restatement, and U.S. Supreme Court cases to establish privity. But I do want to say something about adequate representation because Illinois law also focuses, the key in a lot of the cases is, were your interests represented? Because that's really the key. Every party deserves a day in court. They deserve to have their interests represented. But of course the fund's interests have always been represented. Nowhere in their brief did they ever argue that their interests were not adequately represented. They haven't identified any issue in which they were not able to make an argument or in which they were in any way precluded from bringing forward their case. So they've always represented their own interests. Ms. Mendoza, what do you say we should do with the Perry case? It's a great question. So first of all, if you're looking at federal law, you should look at the Taylor case. That is the U.S. Supreme Court case that lays out the six categories where you can find nonpartisan preclusion. But rather than looking at Taylor, the district court and the fund rely entirely on the Perry case. That's an older Seventh Circuit case. Now, you don't have to say anything about Perry if you don't want to. It is, it's not, it does not reflect Illinois law that we just discussed. No Illinois court published opinion has ever cited it. It is, it is an old, it is after, it is before Taylor. But if you want to, if you do look at it, the facts there are so different. The two parties there were not related. The assignor could not have represented the assignee's interest in the prior case. They were strangers. They didn't know each other. They had, he had not yet sold his claim. That claim had no decision on the merits because the assignor had already litigated his claim, but it had been dismissed for discovery violations. So we're not talking about issue preclusion there. Not only could he not have, but he didn't represent even his own interest in the first case. So I think the court there was concerned with the fact that the assign, the later assignor had never gotten his day in court on his claim. On those facts, it's possible Perry would come out the same way under Illinois law. But if, but the fund and the district court claim that Perry lays out a black letter rule that an assignee can never be barred by preclusion when another case has litigated the exact same issues, and that cannot be considered the law after Taylor, because Taylor clearly outlines six categories where that is the case. It specifically mentions assignors and assignees as an example. So I would say that I do not think the court can accept the interpretation that the district court had in its opinion and that the fund suggests on this appeal. Taylor tells you that what you should do is look at the facts and equities of the specific case, and it sets out six very clear categories. And we have alleged and outlined in our brief that we've adequately alleged that four of those categories apply here. And it's clear that the fund was represented in the prior, its interests have been represented, it was involved in all the prior cases. All the facts are the same. Remember, this case is a particularly important case for issue preclusion because everything in the case is based on 70-year-old documents. The pre-1957 operation of Superior Coal and how it interacted with its parent company. So any case we do again is going to be a redo. We're going to have to sit, a court is going to have to sit and look through the same 80-year-old documents page by page, the way two courts have already done. There's nothing new. There's no witnesses. There's nothing that can be done. So this is an important case for the court to say, enough is enough, you've litigated your case, you've had a day in court, you should be precluded from doing it again. I'd like to reserve the remainder of your time. Yes, I would. Very good. Thank you, Ms. Mendoza. Mr. Sampin, we'll move to you now for argument on behalf of the fund. Yes, your honors. May it please the court, Don Sampin for the defendant. I'll refer to the defendant as the fund or IMSIF. I was planning to spend a few minutes on jurisdiction and then go into the merits if that's agreeable with the court. Very good. Your honors raised a question about, you know, both issues with respect to jurisdiction. I think the Albert case talks about the same or similar injunctive relief being present in the district court at the time the appeal is taken of other similar injunctive relief. And I think it drew a distinction between similar injunctive relief and something that's unrelated to the original injunctive relief which is on appeal. And here we do have the same or similar injunctive relief being present in the trial court and the district court. Do you want to speak to the quantum argument that the appellant's raising, the amount that's left in the district court versus the amount that's here? Well, Ms. Mendoza made the argument that there's very little left in the case. I don't agree with that simply because a portion of the count one, which is a count still pending in the district court, did attempt to limit a portion of the relief being sought to cases in which the fund became involved in the subsidence situation prior to 2019 with respect to issue preclusion. The same count, however, raises issues with respect to claim preclusion. And there's no time limitation attached to the claim preclusion injunctive relief which is being sought. And we know that not just by looking at count one itself but also by the prayer for relief. The prayer for relief doesn't impose any kind of time restrictions at all. So I think there's a significant amount of injunctive relief still being asserted in the district court. But it's all the same or similar type of injunctive relief which is here on appeal. It's injunctive relief against bringing lawsuits based on some preclusion issue so that legal theories clearly overlap with what is on appeal. And that's why we say the Albert case applies and that no jurisdiction under 1292A1 should be allowed here. With respect to the untimeliness issue, let me just go into it very briefly. Count two of the second amended complaint which is here on appeal raised the issue of the Taylor case, Taylor v. Sturgill. And that case was first raised by the magistrate in the district court in response to our motion to dismiss the first amended complaint back in 2021. The magistrate talked about the Taylor case, recommended to the district court that it be applied. The district court in its decision in March of 2022 said no, that the Taylor case isn't applicable and applied the Perry case instead. Union Pacific did not file a motion for reconsideration. Instead it filed its second amended complaint in which it raised the Taylor case again. So as a result, in 2024, when addressing the second amended complaint, the court said that it had already ruled upon the Taylor case that count two was raised in the manner of a motion for reconsideration and the court denied reconsideration. So what we feel occurred in March of 2024 from which the appeal has been taken here is not the denial of injunctive relief, but the denial of reconsideration, simply the refusal to reconsider the ruling that was made back in 2022. And that's why we say that if an appeal is appropriate in the first place, it should have been taken in 2022 instead of 2024. Let me turn to the merits, if that's agreeable to the court. Yes. We believe that the Perry case does in fact reflect Illinois law, and we agree with the district court that the Perry case applies here. And in that case, as your honors are aware, the very same person that had brought a lawsuit, Mr. Perry, against a, I guess it was a towing company, asserting RICO and other rights, and lost, basically lost. He subsequently brought a second lawsuit asserting the same claims against the same towing company in his capacity as the assinee of someone whose rights he had purchased. And this court said that he stood in the shoes of his assenhor and that the privity requirement for preclusion, therefore, was not met. And so the bottom line of the Perry case is that the capacity in which a person brings a lawsuit is important in determining both privity and the applicability of preclusion. Union Pacific tries to distinguish the case. We don't think it's distinguishable. It argues, for example, that Perry involved a claim preclusion, not issue preclusion. The privity requirement for both forms of preclusion are the same. We've cited authority for that in our briefing. It argues that MSIF effectively served as the representative of all property owners who had a subsidence issue, both past, present, and future. And so we should be precluded on sort of a class action representative type theory. And that theory has been rejected not only in the Perry case, but also in the Taylor case, on which Union Pacific also relies. It argues that MSIF was the real party in interest in the subrogation actions that it brings. But Mr. Perry himself was a real party in interest. He held all of the rights of his assenhor. And as such, if there was a monetary recovery or other affirmative recovery in his second lawsuit, he would have been the beneficiary of that. He also, as Ms. Mendoza indicates, they believe that Perry does not represent Illinois law. We disagree with that. For one thing, we've cited the Kramer case. Now, the Kramer case is a little long in the tooth. It's over 100 years old, but it comes from pretty good authority, the Illinois Supreme Court. And there the Supreme Court said that estoppel or preclusion is not applicable when a party brings a subsequent lawsuit in a different capacity. And that concept, the capacity concept, has been written into the restatement of judgment, which we've cited a couple of times throughout the briefs. It's the same concept appears in Evan's case that we've cited and a couple of other cases that we've cited in the briefing. So we feel that the Perry case does, in fact, provide a good representation of Illinois law. Mr. Sampson, the Union Pacific is asking us to grant injunctive relief for all future lawsuits. Is there any estimate of the number or the value of the potential new lawsuits? Well, they allege in their complaint with respect to value that there's millions and millions of dollars involved. I don't know that to be the case. I don't have personal knowledge of that, but that's what they allege in their Second Amendment complaint. As for the number of lawsuits, I don't know, Your Honor. I can tell you this. I've never discussed the number with my client, but the people at MSIF are very smart people, and they're not out to waste money. And if they feel that bringing another lawsuit is going to be a futile exercise, they're not going to do it. They're going to be reasonable about it. But as for the precise number, I don't have an answer to that. And there's no floor necessarily below which lawsuits aren't brought because it's just not cost effective? Well, there probably is. I mean, just like in any other litigation, if the upside is not there, then the lawsuit, you know, the legal expenses are going to exceed the potential recovery, then of course not. They're not going to file a lawsuit under those circumstances. Okay.  Most of the cases on which Union Pacific relies do not involve parties appearing in different capacities. And as we pointed out at pages 28 to 32 of our brief, at some length, most of their cases have to do with a party in a subsequent case that has a preexisting legal relationship with a party in a prior lawsuit. They cite to a few lawsuits, a few cases in which a party attempts to bring a lawsuit on behalf of someone else who has already litigated its rights and lost and privity or preclusion is found in those types of cases. But none of those situations apply here. Ms. Mendoza relied to some extent on the Taylor case, which she says is controlling here. I think the facts of the Taylor case are very important. And the case involved an individual who was a member of an antique aircraft association and he brought a lawsuit against the FAA. It was a FOIA lawsuit for the recovery of documents that were being held under seal by the FAA. He litigated and lost. Subsequently, an acquaintance of his, Mr. Taylor, brought the same lawsuit alleging the same claims seeking the same documents from the FAA. The lower courts, meaning the district court and I think it was the D.C. Circuit Court of Appeals, held that there was preclusion, that Mr. Taylor was precluded on a virtual representation theory and further, that it was in the nature of maybe a class action of some kind. That was the state of the case that went to the Supreme Court. And the Supreme Court reversed. The Supreme Court said, no, Mr. Taylor is not precluded from going forward. The court threw out the virtual representation theory of privity and it further said that that theory could lead to de facto class actions at will. And I suggest to the court that those types of approaches, virtual representation and class actions at will, is what Union Pacific is advocating here to be imposed upon MSIF. In the course of its opinion, as Ms. Mendoza observed, the court set forth by way of dicta certain discrete categories of situations where the court said that a party, a non-party in one case, could be precluded from bringing a subsequent lawsuit if there was an adequate, substantive, pre-existing relationship between that party and someone in a prior lawsuit. Now, the first category, the court also emphasized the importance of having crisp rules with sharp corners, meaning that amorphous theories like virtual representation or maybe what someone believes is equitable under the circumstances, those types of approaches are not observed, are rejected by the Supreme Court. I can go through, to the extent I have time, I'll go through a couple of these categories that Union Pacific is relying upon here. The first category they rely upon involves a pre-existing, substantive relationship between a person to be bound and a party to the original judgment. Well, that simply doesn't apply here because neither MSIF in its capacity of a particular property owner nor the property owner itself was ever a party to a prior lawsuit and neither had a substantive prior existing relationship with someone in a prior lawsuit of the same capacity. So the first category simply is inapplicable. The second category involves a party to a lawsuit who was adequately represented by someone with similar interests in a prior lawsuit. And here the court gave a number of examples and they included things like class action representative or a trustee-beneficiary relationship or some other fiduciary form of relationship, indicating from these examples that it's a formalized type of representation in the earlier lawsuit. And those examples are significant because they indicate that simply because the party in the present lawsuit has a similar interest as someone in the prior lawsuit is not in and of itself sufficient. It's not sufficient because there's no formalized representational relationship between the two. And how do we know that? We know that from the Taylor case itself because Mr. Taylor had the exact same legal interest in recovering documents from the FAA as did his buddy who brought the prior lawsuit and lost and the court said that that was not sufficient. Now I see that I have four seconds left. So I will stop there unless your honors have some questions. Thank you, Mr. Sampin. Yes, thank you. Ms. Mendoza, we'll go back to you now for rebuttal argument. I'll just address a few of the things that the fund raised in their argument. On count one, it only seeks relief for claims that were had before 2019. That's because the decision on the motion to dismiss made it clear that the court thought we had stated a claim for claims that they had before 2019. And the district court has ruled recently in a 54B motion that she finds that the claims are distinct enough, the ones in the district court and on appeal. The fund has continued to ignore that, but everyone else understands that these claims are distinct and they were only seeking relief for the pre-2019 claims. That's the June 4th ruling? Yes. On Perry, the fund emphasized that it was the same party in both cases. I would point the court to the concurrence in Perry, which states very clearly that the majority opinion there seems to conflict with Rule 17, which says that a case must be brought by the real party in interest. And Perry was the real party in interest in both those cases, and IMSEF is the real party in interest in all of these cases. On Illinois cases, the fund has not identified any Illinois case that follows Perry or that really supports their position in any way. They focus on this different capacity argument, but there's no case that talks of... First of all, they're never in a different capacity. They're always suing. They've already paid the homeowner, and they're suing for the money that they've already paid out. They're seeking reimbursement from Union Pacific. With all the cases on different capacity in Illinois, like the Evans case that they highlight, it's a situation where it's a mother, for instance, and the mother sues individually for her own interests. She's not bound or precluded from then suing later in a representative capacity on behalf of the daughter. So the fund's argument would only work if it's different capacity was seeking different interests. So, for instance, representing its own interests on one lawsuit and then another lawsuit only representing some other interests. But that's not the case here. It's never in a different capacity. It's always representing its own interests. Their question on whether there's a floor that they won't bring a lawsuit, the current case in state court is only worth $45,000. It's a small claim. Clearly, if they win one of these cases, they're going to seek a stop against Union Pacific. They don't pick the most expensive claims to bring. They bring claims for different reasons. Maybe so they can stay in state court. Who knows? I don't know their reasons. But they currently have a case pending that they're spending more money on than it's worth, $45,000. So we have every reason to believe they're going to continue to sue us until they win. If you don't preclude them, that's the setup that we have here. We may have to try this case three more times. We don't know. But, of course, as soon as we lose, we'll be precluded. Thank you, Ms. Mendoza. And thank you, Mr. Sampin. The case will be taken under revision.